1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11   ARTHUR F. VASQUEZ,                    Case No. 1:10-cv-1876 JLT (PC)

12                          Plaintiff,     **ORDER DISMISSING FIRST AMENDED**
                                           **COMPLAINT WITH LEAVE TO**
13            v.                           **AMEND**

14   DR. TATE, ET AL.,                     (Doc. 8)

15                          Defendants.

16

17          Arthur Vasquez ("Plaintiff") is a prisoner proceeding pro se and in forma pauperis in this

18   civil rights action against Defendants Dr. A. Joaquin, Dr. B. Grimm, Bautista, R.N., Lapham,

19   R.N., Dr. M. Atarod, Andreola, L.V.N., and Dr. S. Wright Scott, in their individual and official

20   capacities, pursuant to 42 U.S.C. § 1983.  (Doc. 8.)  Plaintiff commenced this action on October

21   8, 2010.  (Doc. 1).  He filed an amended complaint prior to the screening of his initial complaint.

22   All the incidents alleged in Plaintiff's First Amended Complaint occurred at California

23   Correctional Institute  (CCI) in Tehachapi.

24          **I.       SCREENING REQUIREMENT**

25          Because Plaintiff is seeking redress from governmental employees in a civil action, the

26   Court is required to screen his complaint in order to identify cognizable claims.  28 U.S.C. §

27   1915A(a)-(b).  The Court shall "dismiss the complaint, or any portion of the complaint, if the

28   complaint (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

                                              1

(2) seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A(b); 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

## II.    PLEADING STANDARDS

"Pro se documents are to be liberally construed" and "'must be held to 'less stringent standards than formal pleadings drafted by lawyers.'"  Estelle v. Gamble, 429 U.S. 97, 106 (1976) (quoting Haines v. Kerner, 404 U.S. 519, 520-21 (1972)).  "[They] can only be dismissed for failure to state a claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  (Id.)

### Federal Rule of Civil Procedure 8(a)

Under Federal Rule of Civil Procedure 8(a), "[a] pleading that states a claim for relief must contain: (1) a short and plaint statement of the grounds for the court's jurisdiction, . . . ; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought." Fed. R. Civ. P. 8(a).  Each allegation must be simple, concise, and direct.  Fed. R. Civ. P. 8(d)(1).  While a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007) (internal quotation marks and citations omitted).

In analyzing a pleading, the Court should set conclusory factual allegations aside, accept all non-conclusory factual allegations as true, and determine whether those non-conclusory factual allegations accepted as true state a claim for relief that is plausible on its face.  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-52 (2009).  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." (Id. at 1949) (internal quotation marks and citation omitted).  In determining plausibility, the Court is permitted "to draw on its judicial experience and common sense." (Id. at 1950.)

### 42 U.S.C § 1983 Claims

Title 42, § 1983 of the United States Code provides a cause of action against

[e]very person who, under color of any statute, ordinance, regulation, custom, or

2

usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . .

42 U.S.C. § 1983.

"The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." Wyatt v. Cole, 504 U.S. 158, 161 (1992) (citing Carey v. Piphus, 435 U.S. 247, 254-57 (1978)).  It does not provide any substantive rights, but rather "authorizes a cause of action based on the deprivation of civil rights guaranteed by other Acts of Congress." Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979).

A plaintiff stating a claim under § 1983 must allege facts showing he was deprived of a federal right by a person acting under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988); Daniels v. Williams, 474 U.S. 327, 330-31 (1986); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006).  For a defendant to be liable under § 1983, a plaintiff must prove there is an affirmative link between the alleged deprivation and the resulting injury.  See Rizzo v. Goode, 423 U.S. 362, 371-72, 377 (1976).  An affirmative link exists when a defendant "does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Under § 1983, Plaintiff is required to show that (1) each defendant acted color of state law and (2) each defendant deprived him of rights secured by the Constitution or federal law. Humphrey v. Yates, 2009 U.S. Dist. LEXIS 100252, 8-9 (E.D. Cal. Oct. 27, 2009) (citing Long, 442 F.3d at 1185).

### III.    PLAINTIFF'S FACTUAL ALLEGATIONS

Plaintiff's Complaint arises out the medical treatment he received or failed to receive following surgery for an eye condition called pterygium.  On June 12, 2009, Opthalmalogist Sheila Wright Scott recommended Plaintiff undergo the surgery on his right eye.  (Doc. 8 at 5). Plaintiff received the surgery on September 1, 2009.

1    Plaintiff alleges that immediately after surgery, Dr. Wright informed him it would take 4-6
2    weeks to heal.  (Doc. 8 at 5).  She was to follow-up with him in two weeks.  (Doc. 8 at 5).
3    Plaintiff further alleges that after the procedure he was instructed to keep his eye clean and was
4    prescribed two medications: prep forte 1% and ciproflooxin.

5    Plaintiff returned to CCI and was interviewed by the receiving and release nurse.  Plaintiff
6    alleges his medications were ordered "STAT," but were not ready when he arrived.  (Doc. 8 at 5).
7    Although he was informed he would receive the medications later that night, Plaintiff states he
8    did not receive the medications that day or the following day.  He contends that he voiced his
9    concerns about his medications to nurse Bautista.   However, according to Plaintiff, Nurse
10   Baustista told Plaintiff he needed to complete a medical request form to obtain the medications.
11   Her only other response was, "we are not eye doctors." (Doc. 8 at 6).

12   Plaintiff received one of the medications on September 3, 2009 and was told that the other
13   medication was on its way.  (Doc. 8 at 6).  He received the second medication the following day.
14   (Doc. 8 at 6).

15   On September 4, 2009, Plaintiff was seen by CCI physician, Dr. B. Grimm.  (Doc. 8 at 6).
16   At that time, Dr. Grimm informed Plaintiff that he would not receive a follow-up appointment
17   with Dr. Scott , as it was not deemed medically necessary.  (Doc. 8 at 6).

18   Plaintiff states that he continued to apply the medications as directed, but continued to
19   experience pain and eye irritation.  (Doc. 8 at 6).  He claims that when he raised his medical
20   complaints with Nurse Bautista, she again directed him to complete a medical request form.
21   (Doc. 8 at 6).

22   Plaintiff submitted requests for medical treatment on September 8th and 9th.  (Doc. 8 at 6).
23   On September 9, 2009, Plaintiff was examined by Nurse Asher.  (Doc. 8 at 7).  Nurse Asher
24   informed Plaintiff that his eye complaints were simply part of the healing process.  (Doc. 8 at 7).
25   By October, Plaintiff was still experiencing eye pain and discomfort.  Again, he saw Nurse Asher
26   who, according to Plaintiff, did not examine him, but informed him that he was on the list to see
27   the facility physician.  (Doc. 8 at 7).

28   In mid-October, Plaintiff was seen by Dr. Grimm again.  Plaintiff states that during this

4

visit, Dr. Grimm confirmed that he had cancelled Plaintiff's two-week follow-up appointment with Plaintiff's surgeon because Dr. Grimm did not deem it medically necessary at the time. (Doc. 8 at 7). Plaintiff contends that during the October visit, after Dr. Grimm saw Plaintiff's eye, Dr. Grimm "acknowledged Plaintiff's obvious need for medical care," scheduled Plaintiff an "urgent" referral with Plaintiff's eye surgeon, and prescribed additional prep forte 1%. (Doc. 8 at 7).

On October 24, 2009, Plaintiff states that he woke up with a blood blister on his right eye, had blurred vision, and drainage from his right eye. When he expressed his condition to Nurse Bautista, she directed him to complete a medical request form. Plaintiff was seen the following day by Nurse Lapham. (Doc. 8 at 8). Plaintiff contends that Nurse Lapham only took his vitals and did not examine him. Plaintiff states that Nurse Lapham merely stated, "You again, we told you we are not specialists, we can do nothing for you. Stop putting medical slips in and just wait." (Doc. 8 at 8).

Plaintiff was seen by his eye surgeon, Dr. Scott on October 30, 2009. (Doc. 8 at 8). Plaintiff states that she confirmed that there was a "problem with his eye" caused by a delay in applying the medications after surgery. Dr. Scott prescribed additional prep forte 1% and artificial tears. Plaintiff also states that Dr. Scott ordered an additional follow-up appointment for two weeks. (Doc. 8 at 8).

By November 18, 2009, Plaintiff had not received the follow-up appointment with Dr. Scott. Instead, he saw ophthalmologist Dr. Lee. (Doc. 8 at 8). Dr. Lee informed Plaintiff that the eye was still infected, but he would not receive further treatment "due to protocol." (Doc. 8 at 7). On November 20, 2009, Plaintiff filed a health care appeal. As a result, Dr. Lee agreed to submit a new "urgent request" so that Plaintiff could be seen by Dr. Scott. (Doc. 8 at 9).

When Plaintiff saw Dr. Scott on December 11, 2009, she informed him that she recommended a second surgery to remove the blister in his eye. (Doc. 8 at 9). Plaintiff underwent the second surgery on January 6, 2010. At his follow-up appointment with Dr. Scott on January 29, 2010, Plaintiff was informed that he might have glaucoma due to the extended use of the prep forte 1%. (Doc. 8 at 9). Plaintiff was to see Dr. Scott again in 30 days. (Doc. 8 at 9).

1      In February, Plaintiff noticed another growth on his right eye.  (Doc. 8 at 9).  He
2  submitted a medical request and saw Nurse Sedona.  (Doc. 8 at 10).  Nurse Sedona checked with
3  the specialty scheduling clerk and confirmed that no 30-day appointment had been scheduled for
4  Plaintiff with Dr. Scott after the December 11, 2009 visit.  (Doc. 8 at 10).

5      On February 18, 2010, Dr. Lee contacted the Specialty Clinic Scheduling Nurse,
6  Andreola, and had her schedule an "urgent" referral to Dr. Scott for February 28, 2010.  (Doc. 8
7  at 10).  When Plaintiff did not receive that appointment, he completed a new medical request
8  form.  (Doc. 8 at 10).

9      On March 3, 2010, Plaintiff saw Nurse Bennet who followed up with the Specialty Clinic
10  again to ensure Plaintiff would receive an appointment with Dr. Scott.  (Doc. 8 at 10).

11      Plaintiff saw Dr. Scott on March 12, 2010.  At that time she informed him that he had
12  glaucoma.  (Doc. 8 at 10).  She also informed him he may need an additional surgery to address
13  the new growth on his eye.  (Doc. 8 at 10).  At that visit, Dr. Scott prescribed Plaintiff
14  medications for the growth and for glaucoma.  (Doc. 8 at 11).  Plaintiff states that he did not
15  receive the medications for 5 days.  (Doc. 8 at 11).

16      In May 2010, Dr. Scott recommended Plaintiff undergo a third surgery.  However, her
17  recommendation was rejected by the Authorization Review Committee.  (Doc. 8 at 11).  In
18  August 2010, after a letter from Dr. Scott and additional examinations by other physicians, the
19  surgery was approved.  (Doc. 8 at 12).  Plaintiff underwent the surgery on September 28, 2010,
20  but again his follow-up appointments were not scheduled and therefore had to be rescheduled.
21  (Doc. 8 at 12).

22      At a December 14, 2010 visit with Dr. Scott, Plaintiff learned of a new growth on his eye.
23  Dr. Scott attempted, again, to treat it conservatively with medication.  However, as before, the
24  medications did not cure the problem and by January 2011, Dr. Scott recommended Plaintiff
25  receive another surgery.  (Doc. 8 at 13).  Before the fourth surgery, several appointments had to
26  be rescheduled with Dr. Scott, as the specialty clinic continually failed to schedule his follow-up
27  visits with Dr. Scott.  (Doc. 8 at 13).  Plaintiff contends that the specialty clinic also failed to
28  schedule his surgery after the January 2011 visit with Dr. Scott.  Plaintiff finally underwent the

1   surgery on March 3, 2011.  (Doc. 8 at 13).  Plaintiff is currently still undergoing treatment for his

2   glaucoma.  (Doc. 8 at 13).

3   **IV.    DISCUSSION**

4   **A.    <u>Count I – Violation of Eighth Amendment</u>**

5   **1.    "Official Capacities" and the Eleventh Amendment**

6   Plaintiff alleges that Defendants Joaquin, Grimm, Bautista, Lapham, and Andreola are

7   liable for violating his constitutional rights while acting in their official capacity.  (Doc. 8 at 2-4).

8   Specifically, "Count I" of Plaintiff's FAC alleges that Defendants Joaquin, Grimm, Bautista,

9   Lapham, and Andreola subjected him to cruel and unusual punishment when they failed to ensure

10   that received the post-operative medications and follow-up services ordered by his surgeon and

11   failed to respond to his requests for medical treatment.  (Doc. 8 at 15).   Plaintiff raises the same

12   allegations (along with state statutory violations) against these defendants in Count II  as well.

13   The Eleventh Amendment prohibits suits for monetary damages against a State and its

14   agencies.  <u>Gann v. Schwarzenegger</u>, 2010 U.S. Dist. LEXIS 135836, at *20-21 (E.D. Cal. Dec.

15   13, 2010) (quoting <u>Aholelei v. Dept. of Public Safety</u>, 488 F.3d 1144, 1147 (9th Cir. 2007)).  A

16   suit against a state official in his official capacity equates to a suit against the state employing that

17   official, <u>Hafer v. Melo</u>, 502 U.S. 21, 25 (1991), effectively barring a plaintiff from bringing suit

18   on these grounds.  However, the Eleventh Amendment does not bar a suit for monetary damages

19   against a state official sued in his individual capacity.  <u>Id</u>.

20   Although Plaintiff's complaint neither names the State of California nor any of its

21   agencies as defendants; it alleges that Defendants are employees of the California Department of

22   Corrections.  Thus, Plaintiff's claims against Defendants in their official capacity is tantamount to

23   bringing suit against the State.  As a result, Plaintiff's claims against these Defendants in their

24   official capacities cannot stand and are barred by the Eleventh Amendment.

25   **2.    Supervisor Liability**

26   There is no respondeat superior liability under 42 U.S.C. § 1983.  <u>Palmer v. Sanderson</u>, 9

27   F.3d 1433, 1437-38 (9th Cir. 1993); <u>Monell v. Dep't of Social Services</u>, 436 U.S. 658, 691 (1978)

28   (the supervisor of someone who allegedly violated a plaintiff's constitutional rights is not made

1  liable for the violation by virtue of that role).  "Liability under § 1983 arises only upon a showing

2  of personal participation by the defendant. (Citation.)  A supervisor is only liable for

3  constitutional violations of his subordinates if the supervisor participated in or directed the

4  violations, or knew of the violations and failed to act to prevent them. Recently, the Supreme

5  Court rejected that a supervisor can be held liable for his mere "knowledge and acquiescence" in

6  unlawful conduct by his subordinates. Ashcroft v. Iqbal, 129 S. Ct. at 1949.

7        Here, Plaintiff has filed suit against CCI's Chief Medical Officer, Dr. Joaquin, because he

8  "provides clinical management, leadership, and supervision of the clinical physicians and

9  supervises the delivery of medical services." (Doc. 8 at 2).  The only additional reference to Dr.

10  Joaquin is Plaintiff's allegation that Dr. Lee believed Dr. Joaquin should not have authorized the

11  first surgery.  (Doc. 8 at 11). Given that Plaintiff has failed to provide any allegations to show Dr.

12  Joaquin's personal participation in any of the alleged incidents, Plaintiff's claim against Dr.

13  Joaquin must be dismissed.

14        **3.   Failure to Administer Adequate Medical Care**

15        In order to bring a cause of action under the Eighth Amendment based upon inadequate

16  medical care, the plaintiff must first allege that (1) he objectively has a "serious medical need"

17  and (2) that the defendant subjectively responded with "deliberate indifference" to that need.

18  McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1991), overruled on other grounds by WMX

19  Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (quoting Estelle v. Gamble, 429 U.S.

20  97, 104 (1976)); accord Jett v. Penner, 439 F.3d 1091, 1096 (2006); Clement v Gomez, 298 F.3d

21  898, 904 (9th Cir. 2002).  Indications of a serious medical need include "[t]he existence of an

22  injury that a reasonable doctor or patient would find important and worthy of comment or

23  treatment; the presence of a medical condition that significantly affects an individual's daily

24  activities; or the existence of chronic and substantial pain."  McGuckin, 974 F.2d at 1059-60

25  (citing Wood v. Housewright, 900 F.2d 1332, 1337-41 (9th Cir. 1990)).

26        Once a prisoner establishes the existence of a serious medical need, they must then prove

27  prison officials exhibited deliberate indifference in responding to that need.  Farmer v. Brennan,

28  511 U.S. 825, 834 (1994); Jett, 439 F.3d at 1096.  "Deliberate indifference is a high legal

1   standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004).  Although the requirement is

2   less stringent in regard to medical care, "because the responsibility to provide inmates with

3   medical care does not generally conflict with competing penological concerns," Holliday v. Naku,

4   2009 U.S. Dist. LEXIS 55757, at *12 (E.D. Cal. June 26, 2009) (citing McGuckin, 974 F.2d at

5   1060), deliberate indifference is not met through a showing of medical malpractice and requires

6   "more than mere negligence or isolated occurrences of neglect."  Wood, 900 F.2d 1334; see also

7   Toguchi, 391 F.3d at 1060; Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002) (mere medical

8   malpractice insufficient to constitute Eighth Amendment violation); Hutchinson v. U.S., 838 F.2d

9   390, 394 (9th Cir. 1988).  Deliberate indifference may occur "when prison officials deny, delay,

10  or intentionally interfere with medical treatment, or it may be shown by the way in which prison

11  physicians provide medical care."  Jett, 439 F.3d at 1096 (internal quotation marks and citations

12  omitted).  In order to establish deliberate indifference, a plaintiff must show "(a) a purposeful act

13  or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the

14  indifference."  Id.; McGuckin, 974 F.2d at 1060.  In order for a prison official to be held liable,

15  they "must both be aware of facts from which the inference could be drawn that a substantial risk

16  of serious harm exists, and [they] must also draw the inference."  Farmer, 511 U.S. at 837.

17  Where a defendant should have been aware of the risk of substantial harm, but was not, "the

18  person has not violated the Eighth Amendment, no matter how severe the risk."  Gibson v.

19  County of Washoe, Nev., 290 F.3d 1175, 1188 (9th Cir. 2002) (emphasis omitted).

20      In this case, Plaintiff has alleged sufficient facts to demonstrate that he suffered a serious

21  medical need. However, he does not allege any facts to support his conclusion that the conduct of

22  any named defendant in Count I or II constituted inadequate medical care under 42 U.S.C. §

23  1983.

24      **a.    Claim Against Dr. Grimm**

25      Plaintiff complains that Dr. Grimm cancelled Plaintiff's follow-up appointment with Dr.

26  Scott after Plaintiff's initial surgery.  Plaintiff's complaint alleges that Dr. Grimm, who saw

27  Plaintiff three days after his initial surgery, cancelled the appointment at the time because he did

28  not believe the appointment was medically necessary. However, when Dr. Grimm saw Plaintiff

1    later that month, he requested an urgent referral with Dr. Scott.   Thus, Plaintiff's allegations

2    against Dr. Grimm merely demonstrate a difference in opinion regarding treatment between a

3    patient and his care provider.

4         "Although plaintiff may not care for the treatment decisions made by prison staff, his

5    disagreement with the medical care provided is insufficient to state a cognizable constitutional

6    claim for seeking relief under § 1983." To state a claim, Plaintiff "must show that the course of

7    treatment the doctors chose was medically unacceptable under the circumstances ... and ... that

8    they chose this course in conscious disregard of an excessive risk to plaintiff's health." Jackson v.

9    McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (internal citations omitted).

10        At best, Plaintiff's complaint supports a claim for negligent evaluation or diagnosis for

11   failing to appreciate that his condition warranted follow-up care.   Negligence, however, does not

12   support a claim for inadequate medical care under § 1983.  See Broughton v. Cutter Laboratories,

13   622 F.2d 458, 460 (9th Cir. 1980).  As a result, Plaintiff's claim against Defendant Dr. Grimm in

14   Count 1 is **DISMISSED**, as it does not rise to the level of a constitutional violation under the

15   Eighth Amendment.  See Jackson, 90 F.3d at 332.

16        **b.     Claim Against Nurse Lapham**

17        Plaintiff complains that Nurse Lapham failed to render any treatment to him when he saw

18   her on October 25, 2009.  (Doc. 8 at 8).  Plaintiff complains about the attitude the nurse displayed

19   toward him and the fact that she "could do nothing for him."  Plaintiff has failed to allege any

20   facts to show that Nurse Lapham actually had the ability to do anything more than examine him

21   and make a referral to an eye specialist.  In fact, Plaintiff's allegation that Lapham said, "we are

22   not specialists, we can do nothing for you" seems to demonstrate that she may not have had the

23   ability to do anything more than document his symptoms and make a referral.  Also, given that

24   Plaintiff saw his surgeon five days after his visit with Nurse Lapham, it appears a referral to his

25   specialist was requested.  Because Plaintiff has failed to show any purposeful failure to respond

26   by Lapham, Plaintiff's claim against Defendant Lapham in Count I is **DISMISSED**.

27   ///

28   ///

1    **c.      Claim Against Nurse Bautista**

2    Plaintiff's complaint against Nurse Bautista is similar to the claim against Nurse Lapham.

3    Plaintiff complains that he expressed his medical issues to Nurse Bautista, but she failed to render

4    any treatment and only told him to complete a medical request form.  Plaintiff has failed to allege

5    any facts to show that Nurse Bautista actually had the ability to do anything more than provide

6    Plaintiff with the form to schedule an appointment.  Plaintiff's allegations demonstrate that each

7    time he informed Nurse Bautista of a medical issue, she informed him of the process to schedule

8    an appointment.    Thus, Plaintiff's allegations against Nurse Bautista again demonstrate a

9    difference in opinion regarding treatment between a patient and his care provider.  At best, it

10    supports a claim for negligent evaluation or diagnosis for failing to appreciate that his condition

11    warranted immediate care.  As set forth above, negligence does not support a claim for inadequate

12    medical care under § 1983.  *See* Broughton, 622 F.2d at 460.  Because Plaintiff has failed to show

13    any purposeful failure to respond by Nurse Bautista, Plaintiff's claim against Defendant Bautista

14    in Count I is **DISMISSED**.

15    **d.      Claim Against Andreola**

16    Plaintiff's only complaint against this defendant is that she continually failed to schedule

17    the follow-up appointments with Dr. Scott.  However, Plaintiff offers no other facts to suggest

18    that Andreola knew of the need for the appointment and purposely failed to schedule Plaintiff's

19    visits.  In fact, Plaintiff's Complaint continually describes her actions as "dropping the ball."

20    Plaintiff's complaint alleges that Andreola's failure to ensure he received the follow-up

21    appointments violated the Eighth Amendment.    However, her failure to schedule the

22    appointments—in the absence of any other facts demonstrating her deliberation—demonstrates

23    only that she acted negligently.  This does not state a claim under the Eighth Amendment.

24    **B.      State Law Claims – Counts II - V**

25    In Counts two through five, Plaintiff asserts claims for violation of various California

26    states and regulations, including Government code sections 815.4, 845.6, 845.4, Business

27    Professions Code sections 22761(a)(1), 2777, 2878(J), 3500-3503.5, California Penal Code

28    sections 5058, 5054, and California Code of Regulations, Title 15, sections 3350, 3350.2 and

1    3354.  Based upon the manner in which Plaintiff has pled "Counts I-IV," and the fact that he has

2    pled compliance with the California Tort Claims Act (Doc. 8 at 14), Plaintiff appears to be aware

3    that a violation of state law or regulation will not give rise to a claim under 42 U.S.C. § 1983.

4    Gonzaga University v. Doe, 536 U.S. 273, 283, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002).

5         While a district court "shall have supplemental jurisdiction over all other claims that are

6    so related to claims in the action within such original jurisdiction that they form part of the same

7    case or controversy[.]" 28 U.S.C. § 1367(a).  "The district court may decline to exercise

8    supplemental jurisdiction over [any] claim under subsection (a) if . . . the district court has

9    dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c).  As set forth

10   above, Plaintiff has failed to state a cognizable federal claim.  While the Court will allow Plaintiff

11   an opportunity to amend his complaint, he is notified that if he fails to allege a viable federal

12   claim in his amended complaint, the Court will not exercise supplemental jurisdiction over his

13   state law claims. 28 U.S.C. § 1367(a); Herman Family Revocable Trust v. Teddy Bear, 254 F.3d

14   802, 805 (9th Cir.2001).

15        The Court has reviewed each of the state statutes and regulations in question to determine

16   whether civil enforcement is available to Plaintiff under the authorities he cites.  Based upon the

17   Court's review, Government code section 845.6 (failure to summon medical care) is the only state

18   statute alleged by Plaintiff which may support a cause of action against Defendants Grimm,

19   Lapham and Bautista.

20        Government Code section 815.4 describes a public entity's liability for injury proximately

21   caused by a tortious act or omission of an independent contractor of the public entity.  Since

22   Plaintiff is not suing any public entity, Plaintiff cannot rely upon this statute to establish a private

23   right of action against the named defendants.  Government Code sections 845.4 relates to a public

24   entity and public employee's interference with a review of the legality of a prisoner's

25   confinement.  Given that Plaintiff's complaint has not raised any such issues, Plaintiff cannot rely

26   upon this statute to establish a private right of action against the named defendants.

27        Plaintiff also alleges a claim for relief based on violations of California Penal Code

28   sections 5054, 5058, and sections 3350, 3350.3, and 3354 of Title 15 of the California Code of

1  Regulations. A private right of action under a criminal statute has rarely been implied. <u>Chrysler</u>

2  <u>Corp. v. Brown</u>, 441 U.S. 281, 316, 99 S.Ct. 1705, 60 L.Ed.2d 208 (1979). Where a private right

3  of action has been implied, "'there was at least a statutory basis for inferring that a civil cause of

4  action of some sort lay in favor of someone." <u>Chrysler Corp.</u>, 441 U.S. at 316 (quoting <u>Cort v.</u>

5  <u>Ash</u>, 422 U.S. 66, 79, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975)). Sections 5054 and 5058 merely

6  authorize the director to prescribe and amend rules and regulations for the administration of the

7  prisons and vest the responsibility for the care, custody, treatment, training, discipline and

8  employment of persons confined therein are vested in the Secretary of the Department of

9  Corrections and Rehabilitation.  (Cal. Pen. Code sections 5054 and 5058).  Accordingly, the

10  Court finds that Plaintiff fails to state any claims upon which relief may be granted under state

11  law based on the alleged violations of California Penal Code sections 5054 and 5058.

12      With respect to Title 15 regulations, section 3350 describes when medical services should

13  be provided for inmates and sets forth definitions of certain terms, section 3350.2 requires a

14  correctional facility to maintain contracts with off-site medical facilities for medically necessary

15  services, and section 3354 describes the persons permitted to provide medical services to inmates.

16      The existence of regulations, such as these, governing the conduct of prison employees

17  does not necessarily entitle Plaintiff to sue civilly to enforce the regulations or to sue for damages

18  based on the violation of the regulations. The Court has found no authority to support a finding

19  that there is an implied private right of action under Title 15 and Plaintiff has provided none.

20  Given that the statutory language does not support an inference that there is a private right of

21  action, the Court finds that Plaintiff fails to state any claims upon which relief may be granted

22  based on the violation of Title 15 regulations. Accordingly, Plaintiff's claim based on the

23  violation Title 15 is **DISMISSED**.

24      The Court has likewise reviewed the California Business and Professional Code sections

25  at issue and finds there is no language in any of those sections which suggests that civil

26  enforcement of any kind is available to Plaintiff. <u>Cort</u>, 422 U.S. at 79–80; <u>Keaukaha–Panaewa</u>

27  <u>Cmty. Ass'n v. Hawaiian Homes Comm'n</u>, 739 F.2d 1467, 1469–1470 (9th Cir.1984); also

28  <u>Gonzaga University v. Doe</u>, 536 U.S. 273, 283–286, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002)

1  (basing a claim on an implied private right of action requires a showing that the statute both

2  contains explicit rights-creating terms and manifests an intent to create a private remedy).

3  Accordingly, the Court finds that Plaintiff's state law claims based upon the California Business

4  and Professions Code must be **DISMISSED.**

5      **V.   LEAVE TO AMEND**

6      Given the facts alleged by Plaintiff and the status of the law as set forth above, the Court

7  is unsure whether Plaintiff will be able to plead facts sufficient to support a federal claim against

8  any of the Defendants.  However, the Court will provide Plaintiff with the opportunity to file an

9  amended complaint to attempt to cure the deficiencies identified by the Court in this order.  *See*

10 Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987) ("A pro se litigant must be given leave to

11 amend his or her complaint unless it is absolutely clear that the deficiencies of the complaint

12 could not be cured by amendment.") (internal quotations omitted).  Unless Plaintiff can cure the

13 deficiencies in his federal claims, the Court will not exercise supplemental jurisdiction over

14 Plaintiff's state claims.

15     Plaintiff is also cautioned that once he files his amended complaint, his prior pleadings are

16 superceded and no longer serve any function in the case.  *See* Loux v. Rhay, 375 F.2d 55, 57 (9th

17 Cir. 1967).  Thus, the amended complaint must be "complete in itself without reference to the

18 prior or superceded pleading."  Local Rule 220.  "All causes of action alleged in an original

19 complaint which are not [re-]alleged in an amended complaint are waived."  King v. Atiyeh, 814

20 F.2d 565, 567 (9th Cir. 1987) (citations omitted).

21     **VI.   ORDER**

22     Accordingly, it is **HEREBY ORDERED** that:

23     1.   Plaintiff's Complaint against Defendants Joaquin, Grimm, Bautista, Lapham, and

24 Andreola in their individual capacities for violation of Plaintiff's Eight Amendment right to be

25 free from cruel and unusual punishment is **DISMISSED WITH LEAVE TO AMEND**;

26     2.   Plaintiff's Complaint against Defendants Joaquin, Grimm, Bautista, Lapham, and

27 Andreola, in their official capacities, for violation of Plaintiff's Eight Amendment right to be free

28 from cruel and unusual punishment, is **DISMISSED WITHOUT LEAVE TO AMEND**;

1    3.    Plaintiff's Complaint against Defendants Joaquin, Grimm, Bautista, Lapham,

2    Atarod, and Andreola for violations of Government code sections 815.4, 845.4, Business

3    Professions Code sections 22761(a)(1), 2777, 2878(J), 3500-3503.5, California Penal Code

4    sections 5058, 5054, and California Code of Regulations, Title 15, sections 3350, 3350.2 and

5    3354,  are **DISMISSED WITHOUT LEAVE TO AMEND**;

6    4.    The Clerk's Office shall send Plaintiff a civil rights complaint form;

7    5.    Within 30 days from the date of service of this order, Plaintiff **SHALL** file a First

8    Amended Complaint curing the deficiencies identified by the Court in this order.

9    **Plaintiff is advised that his failure to comply with this order will result in dismissal of

10   this case.**

11

12   IT IS SO ORDERED.

13   Dated:   **December 28, 2012**                    **/s/ Jennifer L. Thurston**
                                                        UNITED STATES MAGISTRATE JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28