UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARTHUR F. VASQUEZ,<br><br>        Plaintiff,<br><br>    v.<br><br>TATE, et al.<br><br>        Defendants. | ) Case No.: 1:10-cv-01876 - JLT (PC)<br>)<br>) ORDER REQUIRING PLAINTIFF TO EITHER<br>) NOTIFY THE COURT THAT HE WISHES TO<br>) PROCEED ON HIS COGNIZABLE CLAIMS OR<br>) FILE A THIRD AMENDED COMPLAINT<br>)<br>) (Doc. 11)<br>) |

      Plaintiff Arthur F. Vasquez ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in an action pursuant to 42 U.S.C. § 1983. Plaintiff has consented to the jurisdiction of the United States Magistrate Judge. (Doc. 5). Plaintiff filed his first amended complaint on October 14, 2011. (Doc. 8). The Court dismissed the first amended complaint on December 28, 2012, but granted Plaintiff leave to file a second amended complaint. (Doc. 10). Plaintiff timely filed his second amended complaint on January 28, 2013, (Doc. 11), which the Court now screens pursuant to 28 U.S.C. § 1915A(a)-(b).

      For the following reasons, the Court **ORDERS** Plaintiff to either **NOTIFY** the Court whether he wishes to proceed on his cognizable claims or to **FILE** a third amended complaint.

**I.    SCREENING REQUIREMENT**

    Because Plaintiff is seeking redress from governmental employees in a civil action, the Court is required to screen his complaint in order to identify cognizable claims. 28 U.S.C. § 1915A(a)-(b).

The Court shall "dismiss the complaint, or any portion of the complaint, if the complaint (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

## II. PLEADING STANDARDS

### A. Fed. R. Civ. P. 8(a)

"Pro se documents are to be liberally construed" and "'must be held to 'less stringent standards than formal pleadings drafted by lawyers.'" Estelle v. Gamble, 429 U.S. 97, 106 (1976) (quoting Haines v. Kerner, 404 U.S. 519, 520-21 (1972)). "[They] can only be dismissed for failure to state a claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" (Id.) Under Federal Rule of Civil Procedure 8(a), "[a] pleading that states a claim for relief must contain: (1) a short and plaint statement of the grounds for the court's jurisdiction, . . . ; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought." Fed. R. Civ. P. 8(a). Each allegation must be simple, concise, and direct. Fed. R. Civ. P. 8(d)(1). While a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007) (quotation marks, citations omitted).

In analyzing a pleading, the Court sets conclusory factual allegations aside, accepts all non-conclusory factual allegations as true, and determines whether those non-conclusory factual allegations accepted as true state a claim for relief that is plausible on its face. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-52 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." (Id. at 1949) (Internal quotation marks and citation omitted). In determining plausibility, the Court is permitted "to draw on its judicial experience and common sense." (Id. at 1950)

### B. 42 U.S.C. § 1983

In order to sustain a cause of action under 42 U.S.C. § 1983, a plaintiff must show (i) that he suffered a violation of rights protected by the Constitution or created by federal statute, and (ii) that

2

the violation was proximately caused by a person acting under color of state law. *See* Crumpton v. Gates, 947 F.2d 1418, 1420 (9th Cir. 1991). The causation requirement of § 1983 is satisfied only if a plaintiff demonstrates that a defendant did an affirmative act, participated in another's affirmative act, or omitted to perform an act which he was legally required to do that caused the deprivation complained of. Arnold v. IBM, 637 F.2d 1350, 1355 (9th Cir. 1981) (*quoting* Johnson v. Duffy, 588 F.2d 740, 743-44 (9th Cir. 1978)).

### III.    SECOND AMENDED COMPLAINT

At all times relevant to the second amended complaint,[1] Plaintiff was incarcerated at the California Correctional Institute ("CCI") located in Tehachapi, California. (Doc 11 at 4; 5 ¶¶ 6). Plaintiff joins the following as defendants to this matter: (1) Dr. Joaquin, the chief medical officer ("cmo") at CCI; (2) Dr. Grimm, a medical doctor at CCI; (3) Nurse Bautista, a registered nurse at CCI; (4) Nurse Lapham, a registered nurses at CCI; (5) Pharmacist Atardo, an institutional pharmacist at CCI; (6) Nurse Andreola, the Specialty Clinic scheduling nurse; and (7) Dr. Scott, an ophthalmologist who has contracted with the California Department of Corrections and Rehabilitation ("CDCR") to provide services to inmates (collectively "Defendants"). Id.  5 ¶¶ 7, 8; 6 ¶¶ 9-12; 7 ¶ 13. Plaintiff's 187 page[2] complaint is summarized as follows:

In 2009, Plaintiff developed a pterygium or growth on his right eye, which Dr. Scott diagnosed as necessitating surgical removal. Id. at 7 ¶¶ 15-16.   Dr. Joaquin approved Dr. Scott's recommendation, and Dr. Scott performed surgery on September 1, 2009. Id. at 7-8 ¶¶ 16, 18. Dr. Scott recommended a follow-up visit, prescribed an adrenocortical steroid ("pred forte 1%") and ciprofloxacin for twenty-one day use, and instructed Plaintiff to keep his wound clean. Id. at 8 ¶¶ 19-20.  Plaintiff returned to his cell without extra bandages for his eye, and was not provided his medications until September 3 and 4, 2009. Id. 8 ¶¶ 21, 23; 9 ¶¶ 27-28.

---

[1] Plaintiff voluntarily filed a first amended complaint on October 14, 2011, as he was entitled to do pursuant to Fed. R. Civ. P. 15(a)(1). (Doc. at 8).  The Court deemed Plaintiff's first amended complaint as the first operative complaint for the purposes of screening pursuant to 28 U.S.C. § 1915A.
[2] Plaintiff is **strongly advised** that should he decide to file a third amended complaint, he **SHALL** comply with the requirements of Fed. R. Civ. P. 8(a) and provide a concise statement of the facts.  Plaintiff's third amended complaint, including attached exhibits, **SHALL not exceed 20 pages.**

On September 4, 2009, Dr. Grimm, who is not an ophthalmologist, met with, but did not examine Plaintiff. Id. at 9 ¶¶ 28-30. Dr. Grimm informed Plaintiff that Plaintiff did not need any follow-up appointment with Dr. Scott, despite Plaintiff's concerns about the surgery. Id. at 9 ¶¶ 28-29. Plaintiff avers that Dr. Grimm should have checked the ocular pressure in Plaintiff's right eye and "check[ed] on the healing of the stitches." Id. at 9 ¶ 30. Dr. Grimm canceled Plaintiff's follow-up with Dr. Scott. Id. at 10 ¶ 39.

On an undisclosed date, Plaintiff petitioned Defendant Bautista for emergency medical treatment while she made "her rounds." Id. at 9 ¶ 33. Defendant Bautista advised Plaintiff to fill out the appropriate form to receive medical care, which Plaintiff did on September 8 and 9, 2009. Id. at 10 ¶ 34. Similarly, on September 10, 2009, Nurse Asher informed Plaintiff that his eye irritation was part of the normal healing process. Id. at 10 ¶ 36. On October 7 and 17, 2009, Plaintiff submitted additional requests to receive medical treatment and was finally seen by Defendant Grimm on October 21, 2009, at which time he scheduled an "urgent" referral to Dr. Scott. Id. at 10 ¶ 38.

On October 24, 2009, Plaintiff awoke with blurry vision and a blood blister on his eye, at which time Nurse Bautista told him to follow protocol and fill out the requisite form. Id. at 10 ¶ 40. Nurse Lapham examined Plaintiff for his condition the following day and took only his vital signs. Id. Nurse Lapham informed Plaintiff that she could not do anything for Plaintiff because she was not a specialist. Id. at 11, ¶ 42.

Five days later, Dr. Scott examined Plaintiff and opined that Plaintiff's infection may be caused by the delay in applying the medication to Plaintiff's eye after the September 1, 2009, surgery. Id. at 11 ¶ 45. Dr. Scott prescribed pred forte 1% and artificial tears and ordered a follow-up visit, which Nurse Andreola never scheduled. Id. at 11 ¶ 45, 46. It appears that Nurse Andreola was present at most of Plaintiff's appointments with Dr. Scott and was provided "follow-up appointment orders by Dr. Scott. Id. at 12, ¶ 47, 48. While Nurse Andreola often delayed in scheduling his appointments, she scheduled most of Plaintiff's follow-up appointments after he filed administrative grievances against her. Id. at 12, ¶ 48.

On December 9, 2009, K.A. Lee, M.D., examined Plaintiff's infected eye. Id. at 12 ¶ 51. Three days later, Dr. Scott again inspected Plaintiff's eye and ordered pred forte 1 %, a corticosteroid. Id. at

12 ¶ 52. Dr. Scott excised the growth on Plaintiff's eye on January 16, 2010, and conducted a follow-up examination on January 29, 2010. Id. at 13, 14 ¶¶ 53, 54. At the January 29, 2010, visit, Plaintiff learned he may have developed glaucoma due to the long term use of the corticosteroid. Id. at 13 ¶ 54.

Dr. Scott diagnosed Plaintiff with glaucoma on March 12, 2010, determined that Plaintiff required additional surgery, and prescribed mild pred forte and xalatan. Id. at 14 ¶ 64. Plaintiff received his medication five days later. Id. at 14, ¶ 65. Dr. Scott prescribed eye-drops on May 21, 2010. Id. at 14, ¶ 66. Due to an apparently erroneous prescription instruction, Nurse Bautista told Plaintiff to apply the drops in his left eye rather than his right eye. Id. at 15, ¶¶68, 69.

Dr. Scott performed a third surgery on September 28, 2010. Id. at 16, ¶ 79. Dr. Scott saw Plaintiff for follow-up examinations on October 8, October 22, November 5, and December 24, 2010, when she discovered that a cyst had grown on Plaintiff's right eye. Id. at 16 ¶¶ 81, 82. Plaintiff underwent his fourth surgery on March 13, 2011, to remove the cyst. Id. at 17 ¶ 88.

## IV. DISCUSSION AND ANALYSIS

**A. Plaintiff must demonstrate that each defendant was deliberately indifferent to his serious medical condition.**

As Plaintiff was previously advised,[3] to establish a violation of the Eighth Amendment based on inadequate medical care, a plaintiff must demonstrate "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). In other words, the plaintiff must show the existence of (1) a serious medical need and (2) a deliberately indifferent response by the defendant. Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).

   i.   Plaintiff suffered from a serious medical condition.

A medical need is serious "if the failure to treat the condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997). Indications that a person has a serious need for medical treatment include: the existence of an

---

[3] Plaintiff was advised of the standards required to state a cognizable claim under the Eighth Amendment based upon inadequate medical care in the Order dismissing the first amended complaint, dated December 28, 2012. (Doc. 10 at 8 – 9).

injury that a reasonable doctor or patient would find worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain. McGuckin, 974 F.2d at 1059-60 (citations omitted).

Plaintiff sufficiently demonstrates that he suffers from a serious medical need, namely his eye condition that necessitated four surgeries and that developed into glaucoma. The only issue remaining is whether Plaintiff demonstrates that Defendants engaged in "deliberate indifference" towards his medical need. Each defendant is addressed below.

> ii. Plaintiff must demonstrate that Defendants acted with "deliberate indifference."

A defendant acts with deliberate indifference when he knowingly fails to respond to a serious medical need, thereby inflicting harm on the plaintiff. *See* Farmer v. Brennan, 511 U.S. 825, 837-42 (1994); Jett, 439 F.3d at 1096. Deliberate indifference may appear when a defendant denies, delays, or otherwise interferes with medical treatment. *See* Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988). Nevertheless, "[d]eliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06). In order to establish deliberate indifference, a plaintiff must show "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Id.; McGuckin, 974 F.2d at 1060. In order for a prison official to be held liable, they "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." Farmer, 511 U.S. at 837. Where a defendant should have been aware of the risk of substantial harm, but was not, "the person has not violated the Eighth Amendment, no matter how severe the risk." Gibson v. County of Washoe, Nev., 290 F.3d 1175, 1188 (9th Cir. 2002) (emphasis omitted).

> 1. Plaintiff states a cognizable claim against Dr. Scott.

When considered in the light most favorable to the Plaintiff, Plaintiff states a cognizable claim against Dr. Scott. Plaintiff avers that Dr. Scott was negligent in prescribing Plaintiff pred forte 1% over the course of five to seven months, when the drug's manufacturer provided warnings for use lasting longer than ten days. (Doc. 11 at 24 ¶ 145).

1    Although Dr. Grimm did not completely deprive Plaintiff of medical care, deliberate
2    indifference may also be demonstrated by the way in which prison physicians provide medical care.
3    Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988). Plaintiff indicates that Dr. Scott
4    prescribed the corticosteroid after his first surgery on September 1, 2009. (Do. 11 at 8 ¶ 20). Dr. Scott
5    again prescribed the drug after Plaintiff's October 2009 and December 2009 visits. Id. at 11 ¶ 45; 12 ¶
6    52.

7    During the January 29, 2011, examination, Plaintiff learned that he may have developed
8    glaucoma due to his excessive use of the corticosteroid. Id. at 13 ¶ 54. This indicates that Dr. Scott
9    was aware of Plaintiff's possible medical need at that time. Despite the suspected development of
10   glaucoma, Dr. Scott again prescribed the pred forte 1% at the January 29, 2010, appointment. Id. at 77.
11   Plaintiff was diagnosed with glaucoma on March 12, 2010, which he avers was caused by the long-
12   term use of the corticosteroid. Id. at 14 ¶ 64; 24 ¶ 148. Thus, it appears that Dr. Scott knowingly
13   continued to prescribe a corticosteroid when she was suspected that Plaintiff had developed glaucoma
14   from the drug's use. Therefore, at this early juncture, Plaintiff states a cognizable claim against Dr.
15   Scott for inadequate medical care.

16                2. <u>Plaintiff states a cognizable Eighth Amendment claim against Dr. Grimm</u>.

17   Plaintiff alleges that he informed Dr. Grimm about his fears concerning the surgery and his
18   medical treatment on September 4, 2009. (Doc. 11 at 9 ¶ 28). At the same visit, Dr. Grimm met with
19   Plaintiff, did not examine Plaintiff, and canceled Plaintiff's follow-up with Dr. Scott. Id. at 9 ¶ 28; 10
20   ¶ 39. Plaintiff avers that Dr. Grimm should have measured the ocular pressure in Plaintiff's right eye
21   and "check[ed] on the healing of the stitches." Id. at 9 ¶ 30. As a result, Plaintiff's eye condition
22   deteriorated for over six weeks until he was seen again by Dr. Grimm, on October 21, 2009, who then
23   determined that Plaintiff required urgent medical treatment. Id. at 10 ¶ 38.

24   Although Dr. Grimm did not completely deprive Plaintiff of medical care, as noted above,
25   deliberate indifference may also be demonstrated by the way in which prison physicians provide
26   medical care. Hutchinson, 838 F.2d at 394. While canceling of the appointment with Dr. Scott alone is
27   insufficient to show "deliberate indifference," it is the cancellation juxtaposed with Dr. Grimm's
28   failure to examine Plaintiff that indicates deliberate indifference towards Plaintiff's serious medical

condition. Given the alleged harm resulting from the delay in medical treatment, Plaintiff's allegations are sufficient at this early juncture to show that Dr. Grimm acted with deliberate indifference to a substantial risk to Plaintiff's health.

### 3. Defendant fails to state a cognizable claim against Nurse Lapham.

The crux of Plaintiff's complaint against Nurse Lapham is that she delayed in seeking adequate medical care for Plaintiff and possessed poor bedside manners. (Doc. 11 at 18 ¶¶ 127-129). The facts set forth by Plaintiff, however, demonstrate otherwise.

Plaintiff indicates that on October 25, 2009, Nurse Lapham examined Plaintiff and informed Plaintiff that he needed to await treatment by a doctor, as Nurse Lapham was not a specialist. Id. at 11, ¶ 42. Plaintiff has failed to allege any facts to show that Nurse Lapham actually had the ability to do anything more than examine him and make a referral to an eye specialist.[4] *See* Id. at 11 ¶ 44. In fact, Nurse Lapham's reference to a specialist seems to demonstrate that she may not have had the ability to do anything more than document his symptoms and make a referral. Id. at 11 ¶ 42. Also, given that Plaintiff saw his surgeon five days after his visit with Nurse Lapham, it appears a referral to his specialist was requested. Because Plaintiff has failed to show any purposeful failure to respond by Nurse Lapham, Plaintiff's claim against Nurse Lapham is **DISMISSED**.

### 4. Plaintiff fails to state a cognizable claim against Defendant Bautista.

Like Nurse Lapham, Plaintiff essentially claims that Nurse Bautista delayed in seeking adequate medical care for Plaintiff and possessed poor bedside manners. (Doc. 11 at 18 ¶¶ 127-129). The facts set forth by Plaintiff, however, demonstrate otherwise. Plaintiff complains that he expressed his medical issues to Nurse Bautista, but she failed to render any treatment and only told him to complete a medical request form. Plaintiff has failed to allege any facts to show that Nurse Bautista actually had the ability to do anything more than provide Plaintiff with the form to schedule an

---

[4] Plaintiff avers that Defendant Lapham did not diagnose and treat Plaintiff as she was required to do by the R.N. Protocol entitled "Eye Injury," attached to the second amended complaint as "Exhibit 39." (Doc. 11 at 11 ¶ 44). However, Exhibit 39 sets forth the procedures for a nurse to examine an infected eye and make a referral to a specialist and does not require a nurse to diagnose and treat symptoms. Id. at 164-166. Thus, Defendant Lapham appears to have examined and referred Plaintiff as was required.

8

appointment. Plaintiff's allegations demonstrate that each time he informed Nurse Bautista of a medical issue, she informed him of the process to schedule an appointment.

Additionally, Plaintiff avers that Nurse Bautista was aware that Plaintiff's right eye was infected, but insisted that Plaintiff should apply eye drops to his left eye due to the prescription instructions. (Doc. 11 at 15 ¶ 67-68). Plaintiff, however, does not show any facts to indicate that Nurse Bautista could deviate from the prescription instructions. Thus, Plaintiff's allegations against Nurse Bautista again demonstrate a difference in opinion regarding treatment between a patient and his care provider. At best. Plaintiff demonstrates negligence. As set forth above, negligence does not support a claim for inadequate medical care under § 1983. *See* Broughton, 622 F.2d at 460. Because Plaintiff failed to show any purposeful failure to respond by Nurse Bautista, Plaintiff's claim against Nurse Bautista is **DISMISSED**.

          5. <u>Plaintiff fails to state a cognizable claim against Nurse Andreola.</u>

Plaintiff complains that Nurse Andreola, the scheduling nurse at the specialty clinic, consistently "dropped the ball" in scheduling Plaintiff's follow-up appointments with Dr. Scott and this delay in treatment caused Plaintiff serious harm. Plaintiff indicates that Defendant Andreola was present at almost all of Plaintiff's appointments with Dr. Scott, (Doc. 11 at 12, ¶ 47), which suggests that Defendant Andreola was aware of Plaintiff's serious medical condition. However, Plaintiff fails to show that he acted with deliberate indifference towards Plaintiff.

First, no significant delay occurred between the time when Dr. Scott recommended a follow-up appointment and when a follow-up examination actually occurred. Plaintiff first alleges that Dr. Scott required a follow-up appointment within two weeks of Plaintiff's October 30, 2009, visit, but Nurse Andreola never scheduled this appointment. <u>Id</u>. at 11, ¶¶ 45-46. Nowhere does Plaintiff indicate that Nurse Andreola was present at this particular appointment. The record, however, indicates that Dr. Lee examined Plaintiff's eye two and a half weeks after the October 30, 2009, appointment. <u>Id</u>. at 12 ¶ 49. While it appears Nurse Andreola did not schedule a follow-up to the October 30 visit, Plaintiff was not harmed by any delay because Plaintiff was examined by Dr. Lee within the requisite timeframe. Furthermore, even if Plaintiff had been scheduled by Nurse Andreola, it appears that Plaintiff would not have been authorized by prison officials to see Dr. Scott, as Dr. Lee

9

indicated that "prison medical staff is revising further treatment with [Dr.] Scott due to "protocol." Id. at 68.

Second, Plaintiff has not indicated that Nurse Andreola possessed the culpable state of mind needed to show deliberate indifference. Nurse Andreola was present at the January 29, 2011, appointment, in which Dr. Scott requested a follow-up appointment within three weeks. Id. at 13 ¶ 58. Again, however, Dr. Lee did examine Plaintiff on February 18, 2011, for a follow-up. While Plaintiff complains that both Dr. Lee and Nurse Bennett called the specialty clinic to schedule an appointment for Plaintiff, it is notable that neither medical provider indicated that they spoke with Nurse Andreola. On March 12, 2011, Dr. Scott finally examined and diagnosed Plaintiff with glaucoma due to long term use of the corticosteroid, which appears to be attributable to Dr. Scott and not Nurse Andreola. Id. at 14 ¶ 64.

Finally, Plaintiff seems to complain that Nurse Andreola delayed in scheduling the Plaintiff for follow-up visits, but Plaintiff also admits that he was scheduled *most times* after he complained about the alleged delay. Id. at 12 ¶ 48. Thus, Plaintiff fails to state a cognizable claim against Nurse Andreola for an Eighth Amendment violation of inadequate medical care. Therefore, the claim against Nurse Andreola is **DISMISSED**.

6. Plaintiff fails to state a claim against Pharmacist Atardo.

Plaintiff fails to indicate that Pharmacist Atardo had the requisite state of mind needed to demonstrate "deliberate indifference." Plaintiff seeks to impose liability on Pharmacist Atardo for his tardiness in delivering Plaintiff's medication after the September 1, 2009, surgery, for failing to monitor the use of the corticosteroid, and for improperly instructing Nurse Bautista to apply the corticosteroid to the wrong eye. (Doc. 11 at 23-24 ¶¶ 141-144). However, Plaintiff does not provide any facts that indicate that Pharmacist Atardo somehow knew of Plaintiff's condition or actually caused the delay in dispensing Plaintiff's medication after the September 1, 2009, surgery. Even if Pharmacist Atardo caused a delay in dispensing the medication, Plaintiff states a claim for negligence at best.

Notably, it was Dr. Scott, not Pharmacist Atardo, who treated Plaintiff and prescribed the corticosteroid. Plaintiff does not indicate that Pharmacist Atardo had the ability to go against a

treating physician's orders and refuse to dispense medication. In addition, Plaintiff does not aver that Pharmacist Atardo ever examined Plaintiff. As such, it was Plaintiff's treating physicians, not Pharmacist Atardo, who indicated to which eye the corticosteroid should be applied. Thus, Plaintiff fails to state a cognizable Eighth Amendment claim for inadequate medical care against Pharmacist Atardo and the claim is **DISMISSED**.

**B. Plaintiff fails to state a claim against Dr. Joaquin on the theory of *respondeat superior*.**

42 U.S.C § 1983 provides no remedy against a defendant on the theory of *respondeat superior*. Palmer v. Sanderson, 9 F.3d 1433, 1437-38 (9th Cir. 1993); Monell v. Dep't of Social Services, 436 U.S. 658, 691 (1978). To prove a cause of action against a supervisor for the constitutional violation of his or her subordinates, a plaintiff must provide facts to demonstrate that supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). A supervisor may only be liable where there was a sufficient "a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. Brown v. Williams, Case No. CV 11-02046-DMG, 2012 WL 425771 * 4 (C.D. Cal. Feb. 8, 2012)(*referring to* Redman v. County of San Diego, 942 F.2d 1435, 1443–44 (9th Cir.1991), *cert. denied,* 502 U.S. 1074 (1992)). Plaintiff asserts claims against Dr. Joaquin on the theory of *respondeat superior*.

Plaintiff clearly asserts a claim Defendant Joaquin on the theory of *respondeat superior* as the chief medical officer of CCI. In general, 42 U.S.C. § 1983 does not impose liability on a chief medical officer whose sole act was to review medical appeals. Koch v. Neubarth, Case No. 09-CV-00116-SMS-PC, 2009 WL 4019616 * 5 (E.D. Cal. 2009)(citations omitted). Rather, it must be determined whether the reviewing officer was placed on notice of constitutional violations but then failed to intervene. Koch, 2009 WL at 5. As Defendant Joaquin neither treated nor examined Plaintiff, it is presumed that Defendant Joaquin's sole role was to review and authorize Plaintiff's medical treatment.[5]

---

[5] To the extent Plaintiff seeks to impose liability on Dr. Joaquin's handling of Plaintiff's medical grievance, Plaintiff is advised that he has no constitutional right to have his medical grievance handled in a specific manner. *See* Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988)).

11

Plaintiff avers that Defendant Joaquin permitted systematic delays in Plaintiff's medical treatment to occur, even though Defendant Joaquin had a duty to review Plaintiff's records on a quarterly basis. Id. at 19, 20 ¶¶ 118.  However, Plaintiff received follow-up visits with nurses and physicians after almost every medical grievance was filed.  For instance, on February 28, 2010, Dr. Joaquin reviewed Plaintiff's administrative grievance, and Defendant Wright-Scott examined Plaintiff twelve days later. Id. 11 at 14 ¶¶ 62, 64.

The only additional complaint against Defendant Joaquin is Plaintiff's allegation that he should not have authorized the first surgery when "he knew it did not meet the requirements of protocol[s] set for such surgery." (Doc. 11 at 19 ¶ 115).  Plaintiff provides no facts to support this conclusory allegation.  Furthermore, Plaintiff indicates that this surgery was authorized on the medical recommendation of Dr. Scott.  The fact that Dr. Lee later opined that the first surgery should not have been authorized demonstrates nothing more than a difference of medical opinion amongst doctors, which, without more, is not actionable under 42 U.S.C. § 1983. *See* Sanchez v. Vild, 891 F.2d 240, 242 (1989).  Given that Plaintiff failed to provide facts to show Dr. Joaquin's personal participation in any of the alleged incidents, Plaintiff's claim against Dr. Joaquin is **DISMISSED**.

**C. Plaintiff must meet the requirements of the California Tort Claims Act and Cal. Gov't Code § 845.6 to bring his state claims against Defendants.**

    i.    <u>Plaintiff has met the threshold requirement for maintaining a tort action against a public policy under the California Tort Claims Act</u>.

Plaintiff states a California state negligence claim in his complaint against all defendants. *See* (Doc. 11 at 4, 26). Under the California Tort Claims Act ("CTCA"), a plaintiff may not maintain an action for damages against a public employee unless he has presented a written claim to the state Victim Compensation and Government Claims Board within six months of accrual of the action.  See Cal. Gov't Code §§ 905, 911.2(a), 945.4 & 950.2; Mangold v. California Pub. Utils. Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995).  In pleading a state tort claim, plaintiff must allege facts demonstrating that he has complied with CTCA's presentation requirement.  State of California v. Superior Court (Bodde), 32 Cal.4th 1234, 1243-44 (2004).  Failure to allege compliance constitutes a failure to state a cause of action and will result in the dismissal of plaintiff's state law claims.  Id. Here, Plaintiff

explicitly avers that on February 17, 2010, Plaintiff filed a "government claim with the State of California Board of Control pursuant to Gov. Code 945.4." (Doc. 11 at 18 ¶ 95). Thus, it appears that Plaintiff has met threshold requirement for bringing his medical malpractice claims against Defendants.

      ii.    <u>Cal. Gov't Code § 854.6 requires a showing of a need of immediate medical care</u>.

In Claims II and III, Plaintiff asserts a statutory cause of action against Dr. Joaquin, Dr. Grimm, Nurse Lapham, Nurse Bautista, Nurse Andreola and Pharmacist Atarod pursuant to Cal. Gov't. Code § 845.6. (Doc. 11 at 22 ¶¶ 133-144). The statute provides, in part, that:

> A public employee is [not] liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody; but … a public employee…is liable if the employee knows or has reason to know that the prisoner is in need of *immediate medical care* and he fails to take *reasonable action* to summon such medical care. Nothing in this section exonerates a public employee who is lawfully engaged in the practice of one of the healing arts under any law of this state from liability for injury proximately caused by malpractice."

Cal. Gov't Code § 845.6 (West)(emphasis added). In order to state a cognizable claim under § 845.6, a plaintiff must demonstrate facts indicating that: "(1) the public employee knew or had reason to know of the need (2) for immediate medical care, and (3) failed to reasonably summon such care. <u>Jett v. Penner</u>, 439 F.3d 1091, 1099 (9th Cir. 2006). The statute does not create a duty to supervise the quality of the medical care provided. <u>Jett</u>, 439 F.3d at 1099(*citing* <u>Watson v. State</u>, 21 Cal.App.4th 836, 843 (Ct.App.1993). Liability under the statute is "limited to serious and obvious medical conditions requiring immediate care." <u>Lawson v. Superior Court</u>, 180 Cal. App. 4th 1372, 1385 (2010).

      1.    <u>Plaintiff fails to state a cognizable claim against Dr. Joaquin, Nurse Lapham, Nurse Bautista, Nurse Andreola, and Pharmacist Atardo</u>.

In Claim II, Plaintiff concludes that Dr. Joaquin, Dr. Grimm, Nurse Lapham, Nurse Bautista, Nurse Andreola and Pharmacist Atardo failed to "monitor their nursing personnel," which cannot be the basis of Cal. Gov't Code § 845.6 claim. <u>Jett</u>, 439 F.3d at 1099. As noted above, Plaintiff neither avers that Dr. Joaquin personally examined Plaintiff nor that he was Plaintiff's treating physician and seeks a cause of action against Dr. Joaquin based on his failure to supervise. *See generally,* (Doc. 11). As to Pharmacist Atarod, the basis of Plaintiff's liability claim is that he failed to provide proper

instructions on the use of the corticosteroid, which again speaks to the quality of the health care provided. Id. at 23 ¶ 143; 24 ¶ 144.

Similarly, Plaintiff also avers that "nursing personnel[6] failed to treat Plaintiff in his attempts to receive medical care" and failed to provide Plaintiff with dressing after his September 1, 2009, surgery. Id. at 23 ¶¶ 137, 138. As noted above, however, the facts indicate that Nurses Bautista and Lapham responded to Plaintiff's medical needs by informing him of the proper protocol and by referring him to a specialist shortly after he registered his medical complaints. In regard to Nurse Andreola, Plaintiff complains that she failed to schedule his appointments as ordered by Dr. Scott, but scheduled them after Plaintiff complained. In essence, Plaintiff complains of the quality of medical care provided by Nurses Bautista, Lapham, and Andreola, but does not provide facts to demonstrate that they failed to reasonably respond to an immediate medical need.

While Plaintiff may possess a common law tort claim for negligence, he does not provide sufficient facts to state a cognizable claim under Cal. Gov't Code § 845.6 against Dr. Joaquin, Pharmacist Atarod, and Nurses Bautista, Andreola, and Lapham. Therefore, Claim II is **DISMISSED** as to these Defendants.

### 2. Plaintiff states a cognizable claim against Dr. Grimm

When read in conjunction with Paragraphs 1 through 132, Plaintiff states a cognizable claim under Cal. Gov't. Code § 845.6 against Dr. Grimm in Claim II. Plaintiff also avers that Dr. Grimm met with him three days after the surgery, but did neither examined Plaintiff nor responded to Plaintiff's concerns about his eye. As Plaintiff's treating physician, it is axiomatic that Plaintiff's eye condition was a condition of which Dr. Grimm should have known. However, given Dr. Grimm's alleged cursory response toward Plaintiff at the September 4, 2009, visit, Dr. Grimm failed to provide any medical assistance. Thus, Plaintiff **STATES** a **cognizable claim** against Dr. Grimm under Cal. Gov.'t Code § 845.6.

### 3. Plaintiff fails to state a cognizable claim against Dr. Scott.

In Claim III, Plaintiff fails to state a claim against Dr. Scott pursuant to Cal. Gov. Code § 845.6.

---

[6] It is presumed that Plaintiff refers specifically to Nurses Andreola, Bautista, and Lapham.

14

(Doc. 11 at 24-25 ¶¶ 145-150). Plaintiff alleges that Dr. Scott was "<u>negligent</u>"[7] in prescribing Plaintiff the corticosteroid over the course of several months and failing to monitor Plaintiff's ocular progress. <u>Id</u>. at 24 ¶ 147, 148 (emphasis in the original). The term "months," however, indicates that Plaintiff's development of glaucoma was not readily apparent to Dr. Scott and therefore was not an "immediate medical need." Considering Paragraphs 1 through 144, Dr. Scott did provide medical treatment to Plaintiff, even though such medical treatment was allegedly "negligent." Thus, Plaintiff fails to state a cognizable claim against Dr. Scott under § 845.6. Therefore, Claim III is **DISMISSED**.

## V.     LEAVE TO AMEND

The Court will provide Plaintiff a <u>final</u> opportunity to amend his pleading to cure the deficiencies noted in this order. <u>See</u> <u>Noll v. Carlson</u>, 809 F.2d 1446, 1448-49 (9th Cir. 1987) ("A pro se litigant must be given leave to amend his or her complaint unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.") (internal quotations omitted). In his amended complaint, **<u>Plaintiff must address the deficiencies noted here. Plaintiff is advised that his failure to do so will result in an order dismissing this action</u>.**

In addition, Plaintiff is cautioned that in his amended complaint, he may not change the nature of this suit by adding new, unrelated claims in his amended complaint. <u>See</u> <u>George v. Smith</u>, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints). Plaintiff is also advised that once he files his amended complaint, his original pleadings are superceded and no longer serve any function in the case. <u>See</u> <u>Loux v. Rhay</u>, 375 F.2d 55, 57 (9th Cir. 1967). Thus, the amended complaint must be "complete in itself without reference to the prior or superceded pleading." Local Rule 220. "All causes of action alleged in an original complaint which are not [re-]alleged in an amended complaint are waived." <u>King v. Atiyeh</u>, 814 F.2d 565, 567 (9th Cir. 1987) (citations omitted).

---

[7] Plaintiff's use of the term "negligence" in reference to Dr. Scott and the other Defendants is more akin to a claim for medical malpractice than a claim under Cal. Gov't. Code § 845.6, as the statute specifically does not preclude a public employee from "liability for injury proximately caused by malpractice." In order to state a claim for medical malpractice under California law, Plaintiff must indicate that: "(1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and resulting injury; and (4) actual loss or damage resulting from the professional's negligence." <u>O'Connell v. Kern Valley State Prison</u>, 1:11-CV-02163-BAM PC, 2012 WL 2027141 (E.D. Cal. June 5, 2012). Plaintiff does not state a cognizable claim for medical malpractice in his second complaint against any of the Defendants.

15

As advised previously, while a district court "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy[.]" 28 U.S.C. § 1367(a); (Doc. 10 at 12). "The district court may decline to exercise supplemental jurisdiction over [any] claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). While the Court will allow Plaintiff <u>final</u> opportunity to amend his complaint, he is notified that if he fails to allege a viable federal claim in his amended complaint, the Court will not exercise supplemental jurisdiction over his state law claims. 28 U.S.C. § 1367(a); Herman Family Revocable Trust v. Teddy Bear, 254 F.3d 802, 805 (9th Cir.2001).

Finally, should Plaintiff file a third amended complaint, Plaintiff's amended complaint must contain a **brief and concise** statement of his claim. Plaintiff's complaint is neither unique nor complex, as similar claims are submitted to the Court on a daily basis. There is no need to submit a 187 page document to the Court. Therefore, Plaintiff's amended complaint, including the attached exhibits, **SHALL not exceed twenty pages.**

### ORDER

Accordingly, and for aforementioned reasons, the Court **HEREBY ORDERS** that:

1. Within **21 days** of the date of service of this Order, Plaintiff **SHALL** either:
   a. **NOTIFY** the Court whether he wishes to proceed on his Plaintiff's cognizable claims against: (1) Dr. Scott for inadequate medical care in violation of the Eighth Amendment; and (2) Dr. Grimm for inadequate medical care in violation of the Eighth Amendment; and (3) his Cal. Gov't Code § 845.6 claim against Dr. Scott for failure to treat an immediate medical need; <u>OR</u>
   b. **FILE** a third amended complaint that addresses the deficiencies set forth in this order, which **SHALL not exceed 20 pages**, including the attached exhibits. The amended complaint must bear the docket number assigned to this case and must be labeled "Third Amended Complaint";
2. The Clerk of the Court is directed to send Plaintiff the form complaint for use in a civil rights action; and

3. **Plaintiff is firmly cautioned that failure to comply with this order will result in an order dismissing this action.**

IT IS SO ORDERED.

Dated:   **April 25, 2013**                              /s/ Jennifer L. Thurston
                                                         UNITED STATES MAGISTRATE JUDGE